Good morning, Your Honors. May it please the Court, Bransom and I, along with co-counsel Sarah Kate Helbram, on behalf of the petitioners, Mr. and Mrs. Mariano, now we'll be reserving two minutes for rebuttal. Your Honors, there are four major issues in this case. The first is whether Mr. Mariano is precluded from establishing good moral character under 8 U.S.C. 1101F6. The second is whether Mrs. Mariano and his spouse fail to meet the continuous physical presence requirement through credible testimony. The third issue is whether there was a procedural due process violation when the I.J. failed to rule on a motion to reopen. And the last issue is whether the board committed error in denying a motion to reopen and remand without visit. It is correct that the first time he applied, he gave an incorrect or false date of entry, correct? That's correct, Your Honor. On advice of counsel who has since been disbarred. That is correct, Your Honor. Mr. Mariano? At what point in time did he first correct that statement? Well, when he was at the time when he, when the merits date was entered, that was incorrect. Right? That is correct. The lawyer had told him to put the date down. That is correct, Your Honor. At some point, the lawyer is gone. Right. And how quickly did he correct the misstatement? It was at the first individual hearing, Your Honor, which was on February 13th, 2006. He didn't file anything before that? Well, Your Honor, the problem was that he didn't file additional documents before his merits hearing. And I think that's what he was saying. That the date was incorrect? That's correct, Your Honor. He had filed on August 17th, 2005, he had filed additional documents with his new attorney with a declaration stating that his date of entry was 1990. Then there was a second submission on February 2nd, 2006, and those included affidavits from other people that knew him at the time and who stated that he had entered in the 1990, he stated that the 1989 date of entry that his previous attorney had listed on his settlement application was incorrect, and that he tried to correct that with his previous attorney who is now disbarred. But despite all the demands that he had made to correct that information through his representative in Los Angeles, that never happened. The attorney would keep telling him that he had to follow information, that there was no way of changing it, and that he, there's nothing that could be done. So. Does the record indicate that that's why counsel did not change the date or what they told Andres about the importance of that date? I mean, do we know from the record? Well, when he, at the merits hearing in 2006, he testified that he always told his attorney that his date of entry was 1990. He demanded that it would, that it get fixed. But unfortunately, his attorney told him that since he had made the mistake of putting 1989, that it couldn't be changed. There's nothing that could be done, that he had to follow that information. And Mr. Mariano obviously knew that he was, 1989 was the incorrect date, but he tried to fix it, but his attorney just wouldn't do it for him. So tell me why you think this, the papers that he filed in August of 17, August 17, I think it's 2005, and then the second submission, I guess, as well. And then his ultimate testimony meets the without delay requirement for recanting a lie. Well, Your Honor, because that was the first opportunity that he had, because he sought new counsel. The first counsel that he had in Los Angeles, he kept telling him, you can't do it, you can't do it. And when, at the merits hearing, he said, what could I do? And so we can't do it. How much time expired between retention of new counsel and advising the agency that the prior listed date of entry was incorrect? Well, it was in 2005 when he had actually hired new counsel. I'm looking, was it months, weeks? It was about, because the change of venue was in 2004 to San Francisco. He did attend at least three master calendar hearings between the time the change of venue. No, my question was, between the time the disbarred lawyer is gone and he hires, retains new counsel, and the time that he corrected the earlier statement, how much time expired? It's about a little bit over a year, Your Honor. Okay. Yes. Okay. And so, probably when he went to the master calendar hearings in San Francisco, by then his, the attorney in Los Angeles had withdrawn. He had no counsel. And the third time that he showed up to his master calendar hearing without counsel, there's no questions about his date of entry. And so after, it was straight over to a merits hearing after his third master, where he had shown up without counsel. And when he hired new counsel, and when he did, he immediately corrected the date of entry. So he actually took proper steps when he told his attorney, his new attorney, and he fixed it. And he submitted documents before his merits hearing to correct that. You've answered my question. You can go ahead with your argument. Let me ask you. The rule of, or that an inconsistency must go to the heart of a claim is really more commonly used in the asylum context. Are you aware of any cases that apply them to cancellation of removal, to apply that concept to cancellation of removal? Is this with regards to the false testimony or is it with regards to the physical presence issue in this case? On the physical, well, no, Mr. Andres was the asylum, seeking asylum, is that right? And is Emma, and I'm using their names because it's easier. Is seeking cancellation? Yes, they were both seeking cancellation. The only reason why they submitted an asylum application was as an avenue to get themselves into removal proceedings. The asylum application didn't really have any information other than the fact that Mr. Mariano, the principal applicant, had been here for many years and had no one in Mexico. Now, his wife was just a derivative on his application, on his asylum application. So there's really nothing, they weren't really applying for asylum. They were only using it as an avenue. The main form of relief for them was cancellation of removal. We often talk about the heart of the claim in terms of persecution, but that can't be the case here. That is not the case here, Your Honor. So what was the heart of Ms. Mariano's claim, Emma's claim? For asylum, none, Your Honor, because she was only listed as a derivative on the application. But the heart of the application for cancellation was cancellation of removal, whether they had established the requirements of being here 10 years, whether there was hardship here, and whether they had good moral character. Now, the only issue that Mr. Mariano had was the good moral character, which he corrected immediately, and he felt forced to give an incorrect date. Now, with regards to his wife, the only issue there was just an inconsistency on the date of entry. She entered in 1991. Problem is that she had another witness that maybe had said that she had entered in 1992, but quickly corrected herself that she actually entered in 1991. That's the only inconsistency. And it just doesn't seem that you could make an adverse credibility finding just on that inconsistency alone, because there were other documentary evidence that show that she entered the United States in 1991 with a B-2 visa, that there was immunization records in 1991, and that there's even school records which was later submitted that indicated that she had gone to school in 1991. So if that's the only basis for finding adverse credibility, it's wrong. I mean. Do you want to reserve? Yes, Your Honor. I would like to. Thank you. Good morning. May it please the Court. My name is Arthur Raven. I represent the Attorney General Respondent in this case. Beginning with the initial question, which is how is it that the agency found that the good moral character pronged? Well, he applied for asylum with his old attorney. And the asylum was obviously, it was just a document to get him in the system. It was a full list claim. It was not even an indication that he was ever persecuted or he had a wealth under fear. The only thing he stated on there was, I came in here as a child with my parents. That's it. But that got him enough that he was picked up, he was given notice to appear, and he was now in the system, whereby he could now. He was represented by? The same attorney. And he was now able to, within a month of filing his asylum application, file a cancellation application, which is what he really wanted. So we can't really look at one without looking at the other, because they both have the same wrongful, the same erroneous date on it, incorrect date of entry, which is 1989. Now, not only did he put a wrong date, he says, you know, the attorney compelled him to, but not only did he do that in his applications, but then he, under oath, when he came to the asylum office, he repeated that claim. And in fact, he made corrections on his application, writing in his own handwriting. Did the date make any difference? Well, Your Honor, because it shows that he had the subjective intent to deceive. How did it show that? Is there any authority that if you follow instructions of your lawyer, it's enough to establish that kind of intent? Well, we have several cases in our brief, not from this circuit, but from others, that show that just following your attorney's instructions or notario's instructions, who pretend to be attorneys, is not enough to get you off the hook for deception when you repeatedly lie. That is. Well, deceive means that you have an intent to have somebody believe something that is not true and that's going to make a difference to you. And I don't see what difference this makes as to whether or not he put that date or another date. Well, because he had to establish that he was in the United States prior to the issuance of a notice to appear for 10 continuous years, physically present. So how does it make a difference? It shows that he not only could establish the 10 years, but even more. Because then he went out and got two women to give him declarations, again continuing the deception, and in there putting false information that came in in 1989. This is without his attorney's assistance. He went out and got these on his own. Not only that, you know, when we talk about recanting, you know, this is not a man that in 2004 came forward and said, oh, wait, the information was false in the previous one. Here is new information that's correct. Instead, he just submitted a joint declaration with his wife where he did put in the correct information. He never affirmatively notified the Court that he had given false information before. Even in his testimony? Even in his testimony. Not until cross-examination, when he was confronted with the erroneous information he had previously given, only then did he disclose. So the case would have been different if his lawyer had brought this out on direct? We – well, not necessarily been different, but at least it would have shown a willingness to clear the air, to correct the records without being confronted. Was he evasive on cross? I'm sorry, Your Honor? Was he evasive on cross-examination? I can't say he was evasive, Your Honor. All he was doing was pointing fingers at his attorney. He would take no responsibility for continuing the lies, even when shown the declaration that he got for, you know, from these two other women on his behalf, that had nothing to do with his attorney. The government interviewed his former lawyer? No, Your Honor. No, Your Honor. At that point, Your Honor, the case had been finished by the immigration judge, and that's what – you know, and it had moved on to the Board of Immigration Appeals, and that's where the errors were caught in the transcript and, you know, what he meant. But that's a problem, isn't it, here, that the fact that the errors in the transcript – there's a lot of holes based on the technical problems they apparently were having that might explain his intent, and just trying to figure out if he should be punished for that. Can you make out from those transcripts what his statements were in explanation? Yes, Your Honor, I can, because the second transcript – there are two in the record. The second one is the complete one, and that one does not have as many inaudibles, does not have as many basically, like, missing things. It has several, but not – it does not end mid-sentence. And, Your Honor, he never made a motion to say that that record is insufficient. Well, what in those – in any of those transcripts can you point to that shows his subjective intent? There's nothing in there other than that we can draw the inference, a natural tendency to deceive based on the fact that he continued the deception. He took affirmative steps to go get declarations from other people to continue the deception, which shows that it wasn't just his attorney who was pressing him to do this, but he did it on his own. But where – what shows that in the transcripts? The declarations of the two ladies who submitted declarations that had a false entry date. And what are the dates – what are the dates of those? Your Honor, the first one was given by Ms. Olivia, and that is found on page 852 of the record, and that was given on June 7, 2002. And then the second one – And this is while he's still being represented by that counsel? Yes, Your Honor. Yes, he was. Who – okay. But there's no evidence that counsel was involved in – you know. There's no evidence that counsel was involved? No. Was there evidence they get in the record? That the counsel that had told him to lie also told these women to lie. Well, how do we know they didn't? He didn't. Well, I'm glad, but the lawyer – didn't the lawyer say, hey, we have to go with this date? His lawyer says he put down the wrong date. It's not clear why, but then it seems like the record shows that the lawyer said, well, we've got to go with this date. Mr. Andres is put in a very bad spot at that point in time because his lawyer's telling him, we've got to go with this date. So he's following the advice of counsel. It looks like prior to the testimony that you're citing that he was only on cross-examination, he filed some papers, I think it was in August of 2005, I think that's what Mr. Monnet said, and then a second submission in February of 2006 attempting to correct this. Why wasn't that considered the first opportunity after he no longer had that counsel and he got new counsel to correct the record? I'm not sure I understand your basis for attributing the subjective intent here. Well, I guess the basis is that even though he may have initially put down the wrong information because his attorney was standing there and saying, yes, you need to go with this information, and then the same attorney coming to the solemn interview and told him, you need to continue the line. However, the same attorney was not the one who got these affidavits from Ms. Moreno and Ms. Claudia Olivia. How do we know that? Because Ms. Moreno testified at the hearing and she was asked about her declaration. And she indicated that she just he's the one, it's Ms. Moreno that is the one that said, can you put in this date, and she just put that in, even though she knew it was wrong. And then, you know, later during the hearing she actually testified and said, yes, this is the wrong date. I knew that was wrong. So we were saying that, you know, Mr. Mariano does not have to do that. If the lawyer told him to do it, and he's trying to help his case, and the dates are incorrect, he winds up with bad moral character or failure to show good moral character, that's the conclusion. Well, Your Honor, at some point, he has to take responsibility for giving false information to the agency. You can't just say it was all my attorney's fault. When you go out and actively gather evidence. The phrase is usually materially false. Yes, Your Honor, but Supreme Court has indicated that materiality is not an element here. It's only whether he has subjective intent to deceive, which then the Court rephrased and said in some cases it would be a natural tendency to influence the decision. Is this petition governed by pre-Real ID Act law? That's correct, Your Honor, yes. So it has to go to the – so what is that? That would only affect the second issue, Your Honor, which is Mrs. Mariano's. My time is almost up, but I just want to touch on that. Under the Real ID, her testimony that she had 10 years of continuous physical presence, which was then contradicted by another witness who the immigration agent and the board found their testimony about how she entered and everything was contradictory, under the Real ID Act, it does not have to go to the heart of her claim of being here for 10 years, but her pre-ID Act, it does. It does. So, but we would submit that it does go to the heart of her. Okay. Okay. So, if there are no questions. Thank you. Thank you. Mr. Bonet. Thank you, Your Honor. Can you address the statements that the government's relying on from the two witnesses? Yes, Your Honor. I just want to point out that Mr. Mariano, he came forward with the truth as soon as he hired a new counsel. There's – even on the merits hearing. You have about 50 seconds. Right. Even on the merits hearing. Answer the judge's question. Yeah. The merits hearing, he – it wasn't until cross-examination where he was confronted with his – with his. What was his involvement in the obtaining of the affidavits that the government referred to? At the time, Your Honor, he was represented by the first counsel who told him that he needed to get those affidavits. Even though he said it has to be 1990, he told that in – at the merits hearing, that what had happened. Yes, he did go get it, but it was the attorney's film saying. Okay. So, the government's saying he wasn't represented by that counsel. No, he. And you're saying that he was represented by that counsel. He was, Your Honor, because the E-42B application that was filed in Los Angeles was filed by Mr. McGuire, who was his counsel at the time. The government's argument is he himself went out and got the affidavits. You're saying that he did it because his lawyer said he had to get the evidence and it had to have that date. Pardon me? And it had to have that date. Exactly. And he addressed that at the merits hearing, and it's in the record. Okay. Do we know why the lawyer kept with the wrong date? Well, Your Honor, it seems that the lawyer put the wrong date and then he wanted to basically put it on the client. It sounds like your answer is you don't know. Well, it is he – You're surmising what might have happened, but you don't know. I do not know, but – Okay. Thank you very much. Thank you, Your Honor. I appreciate it. Thank you both for your oral presentations here today. The case is now submitted.
judges: Schroeder, Hawkins, Murguia